Board of Education of the Wappingers Central School District v. D.M. as the parent of E.M., et al.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 18th day of December, two thousand twenty.

Present:     ROSEMARY S. POOLER,
             BARRINGTON D. PARKER,
             GERARD E. LYNCH,
                     *Circuit Judges.*
_____

BOARD OF EDUCATION OF THE WAPPINGERS CENTRAL
SCHOOL DISTRICT,

                     *Plaintiff-Appellant*,

        v.                                                      20-653-cv

D.M., AS THE PARENT OF E.M., A STUDENT WITH A
DISABILITY, A.M., AS THE PARENT OF E.M., A STUDENT
WITH A DISABILITY,

                     *Defendants-Appellees.*

_____

Appearing for Appellant:        Steven L. Banks, Thomas, Drohan, Waxman, Petigrow &
                                Mayle, LLP (James P. Drohan, Neelanjan Choudhury, *on the
                                brief*), Hopewell Junction, NY.

Appearing for Appellees:          Elizabeth Curran, New York Legal Assistance Group (Beth E. Goldman, Laura Davis, Phyllis Brochstein, Sandra L. Robinson, *on the brief*), New York, NY.

      Appeal from the United States District Court for the Southern District of New York (Briccetti, *J.*).

      **ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

      The Board of Education of the Wappingers Central School District (the "District") appeals from a January 31, 2020 judgment of the United States District Court for the Southern District of New York (Briccetti, *J.*), granting summary judgment for Defendants-Appellees D.M. and A.M., parents of E.M. (the "Parents"). The district court's January 30, 2020 opinion and order affirmed a decision of the New York State Education Department State Review Officer ("SRO") ordering the District to reimburse E.M.'s tuition at The Ridge School ("Ridge") for the 2017-18 school year. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

      Congress passed the Individuals with Disabilities Education Act ("IDEA") to "ensure that all children with disabilities have available to them a free appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). School districts must provide each child that qualifies for a FAPE with an individualized education program ("IEP"), which "must include special education and related services tailored to meet the unique needs of a particular child, and be reasonably calculated to enable the child to receive educational benefits." *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 363 (2d Cir. 2006) (internal quotation marks omitted). An IEP is "a comprehensive statement of the educational needs of [that] child and the specially designed instruction and related services to be employed to meet those needs." *Id.* (internal quotation marks omitted). New York State regulations, *see* N.Y. Comp. Codes R. & Regs. tit. 8, § 200.1, *et seq.*, require local committees on special education ("CSE") to develop a particular child's IEP based on "(1) academic achievement and learning characteristics, (2) social development, (3) physical development, and (4) managerial or behavioral needs," *Frank G.*, 459 F.3d at 363 (internal quotation marks omitted).

      Parents of an IDEA-eligible child may challenge an IEP through a due process complaint. The parents may reject the IEP, unilaterally placing their child in a private school, and then seek a reimbursement. *See* N.Y. Educ. Law § 4404(1). An impartial hearing officer ("IHO") holds an evidentiary hearing to determine whether (1) the IEP was inappropriate, (2) the private placement was appropriate to the child's needs, and (3) equitable considerations favor reimbursement. *Frank G.*, 459 F.3d at 363-64. Under New York law, the school district bears the burden of proof on the first question, and the parents bear the burden on the latter two. *See R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 184-85 (2d Cir. 2012).

      An IHO's decision may be appealed to an SRO, *see* N.Y. Educ. Law § 4404(2), and an SRO's decision may be challenged in federal court, *see id.* § 4404(3); *see also* 20 U.S.C

§ 1415(i)(2)(A). The dispute is then resolved through what is called a "motion for summary judgment," although "the procedure is in substance an appeal from an administrative determination, not a summary judgment motion"; the reviewing court, using a preponderance of the evidence standard, is required to conduct an independent review of the administrative record and grant any appropriate relief. *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012) (brackets and internal quotation marks omitted). We review de novo a district court's determination. *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007).

Here, the IHO, SRO, and district court all concluded that the District's proposed IEP for E.M. for the 2017-18 school year was inappropriate, that Ridge was an appropriate private placement, and that the equities favor reimbursement. The District challenges the first two findings, arguing that (1) the SRO applied an improper "general educational milieu" standard when determining whether Ridge was an appropriate placement for E.M., App'x at 784, and (2) its 2017-18 IEP provided E.M. with a FAPE. We disagree.

"A private placement is appropriate if it is reasonably calculated to enable the child to receive educational benefits, such that the placement is likely to produce progress, not regression." *T.K. v. N.Y.C. Dep't of Educ.*, 810 F.3d 869, 877 (2d Cir. 2016) (citations and internal quotation marks omitted). Although the SRO acknowledged Ridge did not offer occupational or speech therapy and that most of its teaching staff was not state-certified, he nevertheless concluded that Ridge's small class size and ability to provide ample one-on-one attention to E.M. made it an appropriate private placement. The SRO briefly opined that he believed the Second Circuit had "retreat[ed]" from the appropriateness standard articulated in *Gagliardo*, App'x at 784, but functionally conducted the "totality of the circumstances" review that we require, *Frank G.*, 459 F.3d at 364. Given the "thorough and careful" review of the record, the SRO's determination is entitled to our deference. *M.H.*, 685 F.3d at 241 (internal quotation marks omitted).

In any event, we agree with the district court that the record, by a preponderance of the evidence, establishes that Ridge was an appropriate placement for E.M. A private placement does not need to "furnish[] every special service necessary to maximize [a] child's potential," *T.K.*, 810 F.3d at 878 (internal quotation marks omitted). Ridge provided a small environment designed for autistic children without behavioral issues, along with real-world socialization opportunities. Additionally, E.M. performed better on the Woodcock Reading Mastery Test, read more accurately and at a higher level, and improved his mathematics skills at Ridge. Because the "test for parents' private placement is not perfection," the record supports the conclusion that Ridge provided "educational instruction specially designed to meet the unique needs of a handicapped child," *Frank G.*, 459 F.3d at 365 (internal quotation marks omitted), and it ultimately benefitted E.M. Therefore, we affirm the district court on this question.

Both the IHO and SRO concluded that the District's 2017-18 IEP would not provide a FAPE, reasoning that the District failed to address how a specialized classroom of 15 students to one teacher would address E.M.'s frequent need for one-on-one attention, even if all the students shared a similar level of cognitive ability. The agency's factual findings on this question were "reasoned and supported by the record," and its review was "thorough and careful." *M.H.*, 685 F.3d at 241 (internal quotation marks omitted). This determination falls squarely within the

3

agency's expertise on educational policy and warrants deference from the judiciary. *See L.O. v. N.Y.C. Dep't of Educ.*, 822 F.3d 95, 117 (2d Cir. 2013) ("[H]ow best to educate an autistic child is a difficult question of educational policy that requires deference to the decisions of administrative experts." (internal quotation marks omitted)). No additional evidence was presented beyond the administrative record, so deference is "particularly warranted" here. *M.H.*, 685 F.3d at 241 (internal quotation marks omitted). We decline to disturb the agency's well-reasoned conclusion and affirm the district court's decision on this issue as well.

We have considered the District's remaining arguments and find them to be without merit. Accordingly, the judgment of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk